■ In the Matter of DANIEL JOHNSON, Appellant, v NEW YORK STATE DIVISION OF PAROLE, Respondent. [884 NYS2d 545]—

Appeal from a judgment (denominated order) of the Supreme Court, Erie County (Christopher J. Burns, J.), entered December 17, 2008 in a proceeding pursuant to CPLR article 78. The judgment dismissed the amended petition.

It is hereby ordered that the judgment so appealed from is unanimously reversed on the law without costs, the amended petition is granted, the determination is annulled, and the matter is remitted to respondent for a de novo hearing before a different panel within 60 days of the date of service of the order of this Court with notice of entry.

Memorandum: Petitioner appeals from a judgment dismissing his amended petition pursuant to CPLR article 78 seeking to annul the determination of respondent, New York State Division of Parole (Parole Board), in December 2007 denying him parole release for the third time. As we noted on the appeal by petitioner from the judgment dismissing his petition seeking to annul the determination in December 2005 denying him parole release for the second time (*Matter of Johnson v Dennison*, 48 AD3d 1082 [2008]), petitioner was convicted of murder in the second degree (Penal Law §§ 20.00, 125.25 [1]) in 1989 on a theory of accessorial liability and received the minimum sentence, i.e., 15 years to life imprisonment (*see* § 70.00 [2] [a]; [3] [a] [i]). We agree with petitioner that Supreme Court should have granted his amended petition, which sought to annul the determination and to direct respondent to conduct a de novo hearing before a different panel.

It is of course well settled that parole release determinations are discretionary and entitled to deference (*see* Executive Law § 259-i [5]; *see generally Matter of Silmon v Travis*, 95 NY2d 470, 476 [2000]). The Parole Board is required, however, "to give fair consideration to each of the applicable statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the [Parole] Board did in fact fail to consider the proper standards, the courts must intervene" (*Matter of King v New York State Div. of Parole*, 190 AD2d 423, 431 [1993], *affd* 83 NY2d 788 [1994]; *see also Matter of Mitchell v New York State Div. of Parole*, 58 AD3d 742 [2009]; *see generally* Executive Law § 259-i [1] [a]; [2] [c] [A]). Although the Parole Board need not expressly refer to the relevant statutory factors in its determination (*see King*, 190 AD2d at 431), we conclude that the determination of the Parole Board in this case fails to comply with the requirement of Executive Law § 259-i (2) (a) that the reasons for denial of parole be "given in detail and not in conclusory terms." Indeed, the only reason for the Parole Board's denial of parole that is discernable from the perfunctory reference to "[t]he violence associated with this terrible crime" is that the determination was based solely upon the seriousness of the crime. "The Legislature, however, has not defined 'seriousness of [the] crime' in terms of specific categories of either crimes or victims and it is apparent that in order to preclude the granting of parole exclusively on this ground there must have been some significantly aggravating or egregious circumstances surrounding the commission of the particular crime" (*King*, 190 AD2d at 433). Here, the mere reference to the violence of the crime, without elaboration, does not constitute the requisite "aggravating circumstances beyond the inherent seriousness of the crime itself" (*id.*).

Further, the record is devoid of any indication that the Parole Board in fact considered the statutory factors that weighed in favor of petitioner's release, such as petitioner's exemplary institutional record and the favorable remarks of County Court at the time of sentencing. In fact, during the notably truncated hearing, the Parole Board focused on matters unrelated to any statutory factor. We therefore conclude on the record before us that the Parole Board failed to weigh all of the relevant statutory factors (*see Mitchell*, 58 AD3d at 743), and that there is "a strong indication that the denial of petitioner's application was a foregone conclusion" (*King*, 190 AD2d at 431-432). Present— Smith, J.P., Fahey, Pine and Gorski, JJ.